Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6400 | **DATE** | September 13, 2004 |
| **CASE TITLE** | *Grant v. Coken Co., et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Because the court concludes that E-Quality did not exhibit a willful refusal to litigate the case as required for the entry of a default judgment, *see Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003), the court strikes its entry of default [R.40-1]. The court thus proceeded with the Plaintiff's Motion for Summary Judgment, which is granted in part and denied in part. [R.36-1]. Plaintiff must file an additional memorandum and supporting documentation regarding her damages request by October 4, 2004. Enter Memorandum and Order.

(11) ■ [For further detail see memorandum and order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 1 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 44 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| | | CLERK | date mailed notice | |
| RTS/s | courtroom deputy's initials | 2004 SEP 13 PM 4:13 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARISSA GRANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Blanche M. Manning |
| v. ) | |
| ) | Case No. 01 C 6400 |
| COKEN COMPANY, INC., ) | |
| E-QUALITY ELECTRIC, INC., and ) | |
| JOHNNY RAYBORN, an individual, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Marissa Grant brings the present Complaint alleging claims of hostile work environment based on sexual harassment, sex discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*, and the state law claim of intentional infliction of emotional distress. The only remaining defendant in this action is E-Quality Electric, Inc. ("E-Quality"), a former Illinois corporation. The court granted E-Quality's attorneys' motion to withdraw on April 10, 2003, based on counsels' assertions that E-Quality was involuntarily dissolved in June 2002 and that a judgment in an unrelated matter was partially satisfied by all of E-Quality's available cash and assets. On April 15, 2004, this court granted plaintiff's motion for leave to file a Motion for Summary Judgment against E-Quality. E-Quality has not responded to the plaintiff's motion despite repeated attempts to contact the defendant and/or defendants' counsel.[1]

---

[1] This court requested that Grant file a motion for default if E-Quality did not file an appearance with this court by July 9, 2004. E-Quality did not file an appearance with this court, but it appears that E-Quality did not receive the minute order directing an appearance or Grant's default motion. Thus, the court cannot conclude that E-Quality exhibited a willful refusal to litigate the case as required for the entry of a default judgment. *See Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). As such, the court strikes its entry of default [R.41-1] and will proceed with Grant's Motion for Summary Judgment [R.36-1].

Accordingly, this court will address the plaintiff's Motion for Summary Judgment without the benefit of E-Quality's responses. For the reasons stated below, the court grants the plaintiff's Motion for Summary Judgment as to Count I, but denies her motion as to Counts II, III and VII.

## I.    BACKGROUND[2]

Grant was employed by E-Quality as an apprentice electrician from May 3, 2000, to November 3, 2000, working at Midway International Airport in Chicago. Johnny Rayborn, a former defendant in this action, was the General Foreman at E-Quality during the relevant time period. As the General Foreman, Rayborn was considered a member of E-Quality's management. In the E-Quality organizational hierarchy, Rayborn was directly under the president and CEO, Reginald Harston.

During Grant's employment with E-Quality, Rayborn harassed Grant with sexually suggestive comments, unwanted touching, and sexual advances on a daily basis. Grant continuously made Rayborn aware that she was not interested in his advances and did not appreciate his sexually offensive remarks and conduct. She repeatedly asked him to stop. Nevertheless, Rayborn would go to Grant's work area a couple of times a day and disrupt Grant's work while making these sexual comments and advances. Consequently, Grant would become extremely distracted and had difficulty maintaining her concentration at work. Due to Rayborn's conduct, Grant also experienced anxiety and stress and became fearful of Rayborn. She had

---

[2] The facts in the "Background" section are derived from the plaintiff's Local Rule 56.1 statements and other pleadings. Because E-Quality has not filed any responses to the plaintiff's summary judgment motion, including a Local Rule 56.1 statement, none of the plaintiff's facts have been properly controverted, and thus are deemed admitted. Therefore, the court accepts all material facts contained in Grant's Rule 56.1 statement as true. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

trouble sleeping, became irritable, and experienced severe headaches and nausea.

Meanwhile, a fellow co-worker asked Grant why she continued to let Rayborn talk to her in this manner. Grant responded that she had only a few months before receiving her "A" card and that if she complained to E-Quality's president, his wife, who was the union EEO liaison, would make it difficult for her to get the "A" card. Grant told her co-worker that she was keeping a log of Rayborn's sexual advances and comments because their immediate supervisor, Darvie Williams, told Grant to do so when she complained to him about Rayborn in May 2000. In addition, other co-workers witnessed Rayborn's sexual statements and advances toward Grant.

On or about October 26, 2000, Grant complained to her union steward, Mark Flynn, that Rayborn was sexually harassing her. Grant also tried to complain to the union EEO liaison, but the liaison never returned Grant's telephone calls. Nonetheless, Flynn advised the president and CEO of E-Quality, Reginald Harston, of Grant's sexual harassment complaint. Flynn asked both Harston and Grant to wait until he determined the proper procedure for handling the sexual harassment complaint before they took any further steps. Despite Flynn's directions, Harston began interrogating E-Quality employees regarding Grant's harassment complaint. Harston also requested that Grant prepare a written statement and then interrogated Grant without her union steward present. Before Flynn got back to Grant and Harston about the proper procedures – and less than a week after Harston was made aware of Grant's sexual harassment complaint – Harston terminated Grant's employment with E-Quality.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of

3

any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion may not rest upon the mere allegations or denials of the adverse party's pleading; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Usually, this court must evaluate the evidence supporting the summary judgment motion in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, when a party fails to respond to a motion for summary judgment, as in this case, its failure constitutes the admission that there are no genuine issues of material fact warranting a trial. *See Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). A party's failure to respond to a motion for summary judgment, however, does not constitute a waiver of the legal issues. *See id.* With these standards in mind, the court turns to Grant's Motion for Summary Judgment to determine whether she is entitled to judgment as a matter of law. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

III. DISCUSSION

A. Sexual Harassment – Hostile Work Environment (Count I)

In evaluating whether a work environment is hostile based on sexual harassment, a plaintiff must establish that: (1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment that affected the psychological well-being of the plaintiff; and (4) there is a basis for employer liability. *See McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004).

Grant has set forth sufficient evidence establishing the first, second, and fourth elements of a hostile work environment claim. Specifically, during Grant's employment with E-Quality,

4

the General Foreman, Johnny Rayborn, harassed her with sexually suggestive comments, offensive remarks, and unwanted touching. Further, he made sexual advances toward Grant almost daily. Grant made Rayborn aware that she was not interested in his advances and did not appreciate his sexually offensive remarks and comments were not welcome. Grant repeatedly asked Rayborn to stop. Rayborn's remarks were sexual in nature and based on Grant's gender. Finally, under the fourth element, E-Quality is strictly liable for Rayborn's conduct because he was a supervisory employee. *See McPherson*, 379 F.3d at 438.³

Thus, the court is left with the question of whether Grant has established that a hostile work environment existed. A plaintiff can establish that a hostile work environment existed if the conduct she was subjected to was so severe or pervasive that it altered her employment conditions and created an abusive working environment. *See id.* (citations and quotations omitted). To qualify as hostile, the work environment must be objectively and subjectively offensive, that is, it must be a work environment that a reasonable person would find hostile or abusive, and one that the victim in fact perceived to be hostile or abusive. *See id.* (quotations and citations omitted).

Because Grant has provided sufficient evidence that she perceived the work environment to be hostile and abusive, the court turns to whether Rayborn's conduct created a work environment that was objectively hostile. To do this, the court considers the frequency and severity of the conduct, whether it was threatening and/or humiliating, and whether the harassment unreasonably interfered with Grant's work. *See Wyninger v. New Venture Gear, Inc.*,

---

³ As Grant correctly asserts, E-Quality cannot bring a *Faragher/Ellerth* affirmative defense because a tangible employment action was taken, that is, the president of E-Quality terminated Grant's employment. *See McPherson*, 379 F.3d at 439.

5

361 F.3d 965, 975-76 (7th Cir. 2004). This court, however, must be careful not to equate objectionable conduct with harassing or abusive conduct. *See id.*

Here, Grant has set forth evidence, corroborated by her former co-workers, that Rayborn made sexual comments on a daily basis and that the comments and conduct were not only humiliating, but also threatening. For instance, on May 4, 2000, Rayborn told Grant that she had bedroom eyes and said "I bet you are good in bed." The next day, Rayborn grabbed her legs and commented "to be so small, you have nice muscles in your legs, the kind that can ride a long time." Three days later, Rayborn told Grant that he had extramarital affairs and that he was addicted to Grant and could not stay away from her. After Grant told Rayborn that she was dating someone, he told her that he always gets his way. About a week later, Rayborn told Grant that he had an X-rated dream about her and that it was graphic. Rayborn also asked Grant if he could taste her "candy". In the summer of 2000, Rayborn commented that he could see she was not wearing any panties and that he would show her how a real man makes a woman feel by concentrating on her "G" spot. When Grant was working on a lift truck, Rayborn made comments such as "you sure look good in that spread eagle position." In the fall of 2000, Rayborn told Grant he was a panther and that she was his prey. Rayborn also asked Grant if he could eat her. In October 2000, after Grant had cut her finger, Rayborn stated "I can't kiss your finger to make it feel better but I will kiss something else that I know will make you feel better."

Grant has also provided evidence that Rayborn hid behind columns to watch her during work and that Rayborn admitted that he was sexually interested in her. Finally, Grant has provided evidence that Rayborn's conduct unreasonably interfered with her work. Because of Rayborn's conduct, Grant could not get her work done in a timely fashion, and she lost her

6

composure and concentration at work. Grant also experienced sleeplessness, severe headaches, and nausea.

After considering the frequency and severity of Rayborn's conduct, its threatening and humiliating nature, and the fact that his conduct unreasonably interfered with Grant's work and well-being, this court concludes that Grant has established that a hostile work environment based on sexual harassment existed and that it was not only subjectively offensive, but also objectively offensive. *See McPherson*, 379 F.3d at 438-39. In other words, Rayborn's conduct was not merely an offensive utterance or two, but was a daily barrage of uninvited sexual solicitations, unwanted touching, and threatening and intimidating words and actions. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995). Because Grant has provided sufficient evidence to fulfill the elements of a hostile work environment claim based on sexual harassment, the court grants Grant's Motion for Summary Judgment as to Count I of the Complaint.

### B. Sex Discrimination (Count II)

An employee alleging sex discrimination may proceed by presenting direct evidence of discriminatory intent or by using the *McDonnell Douglas* burden-shifting method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Grant has not provided this court with any direct evidence of discriminatory intent. Therefore, she must establish a prima facie case of sex discrimination under the burden-shifting method. To do so, Grant must demonstrate that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee, not in her protected class, was treated more favorably. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). As in any Title VII action, the ultimate burden of persuasion

remains on the plaintiff to show that the employer intentionally discriminated against the her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Grant fails to establish the fourth element of a prima facie case of sex discrimination. Although Grant alleged in her Complaint that she was subjected to different and less favorable treatment than her male co-workers, she does not provide this court with any evidence of a similarly situated employee who was treated more favorably than she. To establish that another employee is similarly situated, Grant must show that there is someone who is directly comparable to her in all material respects. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). To determine whether employees are directly comparable, the court looks to relevant factors, including whether the employee: (1) held the same or similar job; (2) was subject to the same standards; (3) was supervised by the same person; and (4) had comparable experience, education, and other qualifications. *See Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Grant has not provided any information of evidentiary quality, *i.e.*, depositions, answers to interrogatories, admissions on file, or affidavits, that fulfill these criteria. *See Celotex Corp.*, 477 U.S. at 322. As such, Grant has not established that one of her co-workers was similarly situated in the first instance, let alone that a similarly situated employee was treated more favorably than she. Because Grant has failed to establish a prima facie case of sex discrimination, the court denies Grant's Motion for Summary Judgment as to Count II of the Complaint.

C.  **Retaliation (Count III)**

There are two distinct ways in which a plaintiff may pursue a retaliation claim. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the first method,

the plaintiff must present direct evidence of a statutorily protected activity, an adverse employment action, and a causal connection between the two. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Because Grant has not provided any direct evidence of a causal connection between her protected activity and her termination, the court turns to the indirect method of establishing a retaliation claim.

An employee may establish a prima facie case of retaliation under the indirect method by showing that: (1) she engaged in statutorily protected activity; (2) she performed her job satisfactorily; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Haywood*, 323 F.3d at 531.

Grant has made a sufficient showing of the first two prongs of a prima facie case of retaliation. After she complained to her immediate supervisor and union steward, the president of E-Quality became aware of Grant's sexual harassment complaint. Within a week, the president terminated Grant's employment after interrogating Grant and her fellow co-workers about the sexual harassment allegation. In addition, Grant has provided this court with evidence of her satisfactory work performance, including her work evaluations which contain grades of excellent or good.

Nonetheless, Grant has not provided this court with any evidence that E-Quality treated similarly situated employees outside of the protected class more favorably. Grant does provide evidence that co-workers who corroborated her sexual harassment complaint were terminated after Harston interrogated them. This evidence, however, does not fulfill the *Stone* indirect burden requirements. Instead, Grant must come forward with evidence that similarly situated

9

employees were treated more favorably than she, not that these employees were treated the same. *See Haywood,* 323 F.3d at 531. Accordingly, Grant has failed to establish a prima facie case of retaliation, and thus the court denies her Motion for Summary Judgment as to Count III.

### D. Intentional Infliction of Emotional Distress (Count VII)

Because the only remaining defendant in this claim is E-Quality, the court must first look to whether E-Quality can be vicariously liable for Rayborn's conduct in the context of the state law tort claim of intentional infliction of emotional distress. To do this, the court must determine whether Grant's claim is preempted by the Illinois Worker's Compensation Act (IWCA). *See* 820 ILCS 305/5(a), 305/11. The IWCA contains an exclusivity provision barring an employee from bringing a common law claim against her employer for accidental injury arising out of and in the course of employment. *See Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 463, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1226 (Ill. 1990). The Illinois Supreme Court has recognized four exceptions to this exclusivity rule: (1) the injury was not accidental; (2) the injury did not arise from the plaintiff's employment; (3) the injury was not received during the course of the employment; or (4) the injury is not compensable under the IWCA. *Id.* at 463; *see also Hunt-Golliday v. Metropolitan Water Reclamation Dist.,* 104 F.3d 1004, 1016 (7th Cir. 1997).

Grant contends that Rayborn's alleged tortious conduct was not accidental under the first exception to the exclusivity rule. Because injuries intentionally inflicted by a co-worker are accidental from an employer's point of view, the injured employee's sole remedy against the employer is under the IWCA unless the employer's alter ego committed the tort at the direction of the employer, that is, the employer commanded or expressly authorized the tortious conduct. *See Meerbrey,* 139 Ill.2d at 464-65; *see also Hunt-Golliday,* 104 F.3d at 1016. In determining

10

whether Rayborn was E-Quality's "alter ego", this court must distinguish between mere supervisory employees, such as managers or foremen, and employees who have the authority to make decisions and set policy on behalf of the employer. *See Jablonski v. Multack*, 63 Ill.App. 3d 908, 912-13, 20 Ill. Dec. 715, 380 N.E.2d 924 (Ill.App.Ct. 1978) (supervisor must be so dominant in the corporation that he could be deemed the alter ego of the corporation). The fact that a supervisor was acting within the scope of his authority is not the equivalent of the employer expressly authorizing or commanding the commission of an intentional tort. *See Meerbrey*, 139 Ill.2d at 465.

In her Complaint, Grant did not allege that Rayborn was acting as an alter ego of E-Quality. *See id.* at 464-65. More importantly at this procedural posture, Grant has not provided this court with sufficient evidence establishing that Rayborn had the authority to set policies and make decisions on behalf of E-Quality. *See Jablonski*, 63 Ill.App.3d at 912-13. Although Grant provided her own affidavit averring that as General Foreman Rayborn had the authority to set and enforce company policies, her statements are not supported by other evidence in the record. *Cf. Rogers v. City of Chicago*, 320 F.3d 748, 751 (7th Cir. 2003) (self-serving affidavit not supported by record cannot create genuine issue of material fact). Besides Grant's statements, there is nothing in the record about the corporate or management structure of E-Quality, such as whether it was a closely-held or publically traded corporation. In addition, Grant does not present evidence in which this court could infer that Rayborn exercised control in the management of E-Quality, such being a majority shareholder or corporate officer. *See, e.g., Sutton v. Overcash*, 251 Ill.App.3d 737, 755, 191 Ill.Dec. 230, 623 N.E.2d 820 (Ill.App.Ct. 1993).

Simply put, Grant has not given this court sufficient evidence to determine that Rayborn was E-Quality's alter ego. This court knows nothing of Rayborn's responsibilities and duties within the corporate structure, the discretion he exercised on behalf of the corporation, or even his day-to-day duties at E-Quality. Therefore, Grant's action against E-Quality for the intentional infliction of emotional distress is preempted by the IWCA. The court, thus, denies Grant's Motion for Summary Judgment as to Count VII of the Complaint.

## IV. DAMAGES

### A. Punitive Damages

Due to Grant's success on her hostile work environment claim, the court must determine whether E-Quality can be held liable for punitive damages. A plaintiff may recover punitive damages under Title VII if the following requirements are satisfied: (1) the employer acted with knowledge that its actions may have violated federal law; (2) the employee who discriminated against the plaintiff is a managerial agent acting within the scope of his employment. *See Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 482 (7th Cir. 2003) (citations and quotations omitted). Even if these requirements are met, an employer may avoid punitive damages if it can show that it engaged in good faith efforts to implement an anti-discrimination policy. *Id.* (citing *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 545 (1999)).

First, Grant must establish that E-Quality acted with knowledge that its actions may have violated federal law. Under this requirement, E-Quality need not be aware that it is engaging in discrimination, but acted "in the face of a perceived risk that its actions will violate federal law." *See Kolstad*, 527 U.S. at 535-36. Grant may satisfy this element by demonstrating that the president and CEO, Reginald Harston, knew or was familiar with the anti-discrimination laws

12

and the employer's policies for implementing those laws. *See Bruso v. United Air Lines, Inc.,* 239 F.3d 848, 857-58 (7th Cir. 2001). In his response to Grant's Illinois Department of Human Rights complaint, Harston admits that E-Quality did not have an anti-discrimination policy, but claims that the company followed the policy issued by the apprenticeship program. The response specifically states: "E-Quality Electric regrettably did not have its own policy against sexual harassment at the time of the alleged violation, instead, Equality [sic] Electric has followed the policy issued by the apprenticeship program." Harston further admits that he was responsible for investigating internal complaints of sexual harassment. Harston's admissions support the conclusion that Harston was familiar with anti-discrimination laws; therefore, fulfilling the first requirement for punitive damages.

Second, the court must determine whether E-Quality is liable for Rayborn's conduct. Hence, the court must decide whether Rayborn was a managerial agent acting within the scope of his employment. *See Bruso,* 239 F.3d at 858. This inquiry is fact intensive, thus the court must examine Rayborn's authority at E-Quality, the amount of discretion he had in executing his job duties, and the manner in which he carried out his duties. *See id.* As discussed above, there is little evidence in the record regarding Rayborn's duties and responsibilities at E-Quality. We do know that Rayborn was the General Foreman and supervised employees. On the other hand, the amount of discretion Rayborn was afforded, how he carried out his job responsibilities, and his role within the corporation are unclear. Even if Grant were to establish that Rayborn was a managerial agent under this requirement, she cannot show that he was working in the scope of his employment when he sexually harassed her. In other words, this court would be hard-pressed to conclude that Rayborn's conduct served his employer's interests or was part of his job

performance or responsibilities. *Cf. Kolstad*, 527 U.S. at 542-44.

Because Grant has failed to establish the requirements allowing her to seek punitive damages for her hostile work environment claim, this court need not determine whether E-Quality engaged in good faith efforts to implement an anti-discrimination policy. *See Lamply*, 340 F.3d at 482. In sum, E-Quality is not liable for punitive damages.

**B.     Other Damages**

In her Complaint, Grant also seeks actual damages, including lost wages, compensatory damages, prejudgment interest on her damages award, attorney's fees and costs, reinstatement, and injunctive relief. In her memorandum to this court, however, Grant only requests that the court enter judgment in her favor and award her $12,000 in back-pay and $200,000 for compensation for her emotional injuries and as punitive damages. Grant, however, needs to further substantiate her actual damages request with documentation such as tax forms regarding her employment with E-Quality or similar employment documentation. Also, Grant must reassess the amount of compensatory damages she is requesting without the addition of punitive damages based on this court's opinion that E-Quality is not liable for punitive damages. Accordingly, Grant must file an additional memorandum and supporting documentation regarding her damages request by October 4, 2004.

## IV. CONCLUSION

For the foregoing reasons, the court grants the Plaintiff's Motion for Summary Judgment as to Count I, but denies Plaintiff's Motion for Summary Judgment as to Counts II, III, and VI of the Complaint [R. 36-1]. Plaintiff must file an additional memorandum and supporting documentation regarding her damages request by October 4, 2004.

ENTER:

*Blanche M. Manning*

Blanche M. Manning
United States District Court Judge

DATE: September 13, 2004