## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARISSA GRANT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Judge Blanche M. Manning** |
| **v.** | ) | |
| | ) | **Case No. 01 C 6400** |
| **COKEN COMPANY, INC.,** | ) | |
| **E-QUALITY ELECTRIC, INC., and** | ) | |
| **JOHNNY RAYBORN, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Marissa Grant brings the present Motion to Reconsider the court's denial of

summary judgment on her claims of sex discrimination and retaliation in violation of Title VII,

42 U.S.C. § 2000(e) *et seq.*, and the state law claim of intentional infliction of emotional distress.

In addition to the motion for reconsideration, Grant also provides documentation supporting her

claim for back pay and seeks an evidentiary hearing on her request for compensatory damages

related to her sexual harassment claim, on which this court granted summary judgment in Grant's

favor. For the following reasons, the court denies Grant's motion to reconsider, denies Grant's

request for back pay, denies Grant's request for an evidentiary hearing as to the compensatory

damages, but awards plaintiff $35,000 in compensatory damages.

## I.     BACKGROUND

This court will assume familiarity with the court's summary judgment order and the

factual background provided therein. To briefly recap, Grant was employed by E-Quality as an

apprentice electrician from May 3, 2000, to November 3, 2000. Johnny Rayborn, a former

defendant in this action, was the General Foreman at E-Quality during the relevant time period

and was considered a member of E-Quality's management. In the E-Quality organizational

hierarchy, Rayborn was directly under the president and CEO, Reginald Harston.

During Grant's employment with E-Quality, Rayborn harassed Grant with sexually

suggestive comments, unwanted touching, and sexual advances on a daily basis. Due to

Rayborn's conduct, Grant experienced anxiety and stress and became fearful of Rayborn. She

had trouble sleeping, became irritable, and experienced severe headaches and nausea. Grant did

not report the harassment because she was concerned that if she complained to E-Quality's

president, his wife, who was the union EEO liaison, would make it difficult for her to get the "A"

card.

On or about October 26, 2000, Grant complained to her union steward, Mark Flynn, that

Rayborn was sexually harassing her. Flynn asked both Harston and Grant to wait until he

determined the proper procedure for handling the sexual harassment complaint before they took

any further steps. Despite Flynn's directions, Harston began interrogating E-Quality employees

regarding Grant's harassment complaint and less than a week after being made aware of Grant's

sexual harassment complaint, he terminated Grant's employment with E-Quality.

On September 13, 2004, this court granted Grant's motion for summary judgment on her

claim of sexual harassment, but denied summary judgment on her claims of sex discrimination,

retaliation and intentional infliction of emotional distress. In that order, the court ordered Grant

to submit a memorandum supporting her claims for back pay and compensatory damages.

Grant moves for reconsideration of the court's denial of her motion for summary

judgment as to her claims of sex discrimination, retaliation and intentional infliction of emotional

distress, submits documentation for her request for back pay and asks the court for an evidentiary

hearing as to her compensatory damages.

## II.    MOTION TO RECONSIDER STANDARD

A motion for reconsideration will be granted where:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990)(citation omitted).

## III.   DISCUSSION

### A.    Sex Discrimination (Count II) and Retaliation (Count III)

As noted in this court's September 13, 2004 memorandum and order on Grant's motion for summary judgment, in order to establish a prima facie case of sex discrimination under the burden-shifting method, a party must demonstrate that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee, not in her protected class, was treated more favorably. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). As for retaliation, an employee may establish a prima facie case of retaliation under the indirect method by showing that: (1) she engaged in statutorily protected activity; (2) she performed her job satisfactorily; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Haywood v. Lucent Tech.*, 323 F.3d 524, 531 (7th Cir. 2003).

This court found in its September 13, 2004 order that Plaintiff had failed to submit any evidence regarding the fourth prong; thus, it denied summary judgment on Grant's sex discrimination and retaliation counts. Grant now seeks in her motion for reconsideration to submit the evidence that she previously excluded. This she cannot do.

Grant was fully aware of the requirements for proving a sex discrimination claim under Title VII. Indeed, in her motion for summary judgment, Grant recited the elements for establishing a prima facie case of the exact elements listed above and attempted to demonstrate that similarly situated employees were treated more favorably, but failed to provide any information of evidentiary quality to do so. Grant was also required to demonstrate that similarly situated employees were treated more favorably to prove her retaliation claim under the indirect method, but failed to do so.

Oddly, Plaintiff asserts without explanation that she did not submit evidence of similarly situated employees because she "had no opportunity to do so." But the motion for summary judgment was filed by Grant and was unopposed—if she did not include the proper evidence to support her sex discrimination and retaliation claims in her motion and Rule 56.1 statement, when did she plan on submitting it? Grant's attempt to submit the required evidence on a motion for reconsideration is not appropriate in these circumstances. Accordingly, her request for reconsideration of this court's denial of her sex discrimination and retaliation claims is denied.

## B.      Intentional Infliction of Emotional Distress (Count VII)

Grant also requests that this court reconsider its denial of summary judgment of her state law claim of intentional infliction of emotional distress. In its original order, this court concluded that Grant's claim was preempted by the Illinois Worker's Compensation Act

4

(IWCA). *See* 820 ILCS 305/5(a), 305/11. Grant asks this court to reconsider its ruling

contending that the preemption argument was not raised in her brief. The court may consider

whether the IWCA preempts Grant's intentional infliction of emotional distress claim sua sponte.

In any event, Grant's arguments in her motion to reconsider do not persuade the court to revisit

its earlier ruling.

As noted in its original order, the IWCA contains an exclusivity provision barring an

employee from bringing a common law claim against her employer for accidental injury arising

out of and in the course of employment. *See Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455,

463, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1226 (Ill. 1990). One exception that the Illinois

Supreme Court has recognized to this exclusivity rule (and the only one that is relevant to this

motion) is that the injury is not accidental. *Id.* at 463; *see also Hunt-Golliday v. Metropolitan

Water Reclamation Dist.*, 104 F.3d 1004, 1016 (7th Cir. 1997).

The court noted that because injuries intentionally inflicted by a co-worker are accidental

from an employer's point of view, the injured employee's sole remedy against the employer is

under the IWCA unless the employer's alter ego committed the tort at the direction of the

employer, that is, the employer commanded or expressly authorized the tortious conduct. *See

Meerbrey,* 139 Ill.2d at 464-65; *see also Hunt-Golliday,* 104 F.3d at 1016.

In denying summary judgment in its original order, the court concluded that Grant did not

allege that Rayborn was acting as an alter ego of E-Quality or provide this court with sufficient

evidence establishing that Rayborn had the authority to set policies and make decisions on behalf

of E-Quality. *See Jablonski*, 63 Ill.App.3d at 912-13. Although Grant had provided her own

affidavit averring that as General Foreman Rayborn had the authority to set and enforce company

policies, this court found that her statements were not supported by other evidence in the record. *Cf. Rogers v. City of Chicago,* 320 F.3d 748, 751 (7th Cir. 2003) (self-serving affidavit not supported by record cannot create genuine issue of material fact).

As her primary argument that this court reconsider its ruling on this count, Grant asserts that another court in this district recently held that an employee's claims of sexual harassment and retaliation[1] were not preempted by the IWCA, citing *Roberts v. Cook,* 2004 U.S. Dist. LEXIS 8089, *17-18 (N.D. Ill. May 12, 2004). In fact, this is not what the *Roberts* court found. A review of the *Roberts* decision shows that the court did not even mention the IWCA in that order. Rather, the court held in *Roberts* that the plaintiff's claim of intentional infliction of emotional distress was not preempted by the *Illinois Human Rights Act,* not the IWCA.

Grant also argues that "management's knowledge coupled with lack of follow-up action is express authorization of injurious conduct." This assertion does not appear to be correct. *See Temores v. Cowen,* 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003)(in discussing whether an injury is accidental so as not be preempted by the IWCA, the court stated that "a claim that management ignored evidence that the conduct was taking place is not sufficient; what is required is 'actual direction, encouragement, or participation' by management.") (internal citation omitted). In addition, this alleged rule fails to address the court's basis for denial—that Grant had failed to put forth any evidence that Rayborn was the company's alter ego. As to this, Grant claims that the "court's request that plaintiff show that Rayborn was E-Quality's alter-ego improperly places the burden on plaintiff" because, according to Grant, due to the defendant's failure to respond to the

---

[1]Although Grant refers here to sexual harassment and retaliation, this court believes that Grant means to refer to the claim of intentional infliction of emotional distress.

motion for summary judgment no issues of material fact existed and defendant had in its discovery responses admitted that Rayborn was a supervisor. As this court stated in its original order, simply stating that someone is a supervisor is insufficient to show that he or she is the company's alter-ego. Further, although no issues of material fact existed as to the facts stated by Grant, she put forth no facts regarding whether Rayborn was the alter-ego of E-Quality.

As previously stated by the court, Grant has not given this court sufficient evidence to determine that Rayborn was E-Quality's alter ego. This court, therefore, cannot determine Rayborn's responsibilities and duties within the corporate structure, the discretion he exercised on behalf of the corporation, or even his day-to-day duties at E-Quality. Therefore, Grant's motion for reconsideration on the claim of intentional infliction of emotional distress is denied.

## IV. DAMAGES

### A. Punitive Damages

Grant provides no basis on which this court should revisit its denial of her request for punitive damages other than Grant thinks the court was wrong. The court declines Grant's invitation to reconsider its ruling because Grant has failed to point to any new law or changed circumstances. Thus, it denies her motion for reconsideration on her request for punitive damages.

### B. Other Damages

In its September 13, 2004, memorandum and order, this court ordered Grant to file an additional memorandum and supporting documentation regarding her request for damages.

In her motion for summary judgment and in her current filing, Grant requests that she be awarded damages for back pay. "The district court has broad equitable discretion to fashion back

pay awards to make the Title VII victim whole." *David v. Caterpillar*, 324 F.3d 851, 865 (7th Cir. 2003) (citation omitted). However, Grant was not successful on her retaliation claim. Thus, because Grant failed to show a discriminatory discharge, she is not eligible for back pay. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 660-61 (7th Cir. 2001) (stating that it was a "requirement that a plaintiff establish a discriminatory discharge in order to receive lost pay" and holding that because jury found in favor of plaintiff on sexual harassment claim but rejected the retaliatory discharge, plaintiff was not entitled to back pay under Title VII).

In her motion for summary judgment, Grant also requested compensatory and punitive damages in the amount of $200,000. Grant has renewed this request despite this court's denial of her request for punitive damages. In its September 13, 2004, ruling on Grant's motion for summary judgment, the court instructed Grant to file an additional memorandum and supporting documentation for her damages claims. While Grant has cited some cases that she contends support her claim for compensatory damages, she has not submitted any additional documentation regarding her request. Rather, she simply recounted the alleged physical and emotional problems she suffered from as a result of the sexual harassment and requested an evidentiary hearing.

The court provided Grant an opportunity to furnish the court with the appropriate evidentiary materials in support of her claim for compensatory damages, but Grant elected not to take advantage of that opportunity. Moreover, Grant has failed to explain why filing written materials in support of her claim is inadequate. Accordingly, the court finds no basis on which to grant Grant's request for an evidentiary hearing and the request is denied.

Instead, the court will address her request for damages based on the evidence already

provided to the court. When reviewing challenges to the amount of damages awarded in a Title VII case, the Seventh Circuit has considered three factors: (1) whether the award is "monstrously excessive"; (2) whether there is a rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3f 1276, 1285-86 (7th Cir. 1995). These factors are instructive to this court when fashioning an appropriate award.

Here, Grant did not include any affidavits or other evidence in her most recent request for compensatory damages. She did, however, submit an affidavit in support of a prove-up on damages following a default judgment against E-Quality.[2] In that affidavit, attached as Exhibit B to Plaintiff's Prove-Up Documentation filed on August 10, 2004, Grant states that she suffered the following physical and emotional consequences as a result of the sexual harassment by her supervisor: stress, anxiety, jumpiness, sleeplessness that increased over time, irritability both at work and at home, severe headaches, adverse effects on her physical appearance such as dark circles under her eyes and less attention to her personal grooming, and shaking and throwing up after encounters with her supervisor. She also states that she was diagnosed with severe depression, and given a prescription for an antidepressant and referred to a therapist.

This court must determine an appropriate damages award that reflects compensation for Grant's suffering, but one that is not "monstrously excessive" and is comparable to awards made in similar cases. Grant cites to *Spina v. Forest Preserve Dist. of Cook County*, 207 F. Supp. 764 (N. D. Ill. 2002), stating that the court in that case found that the jury's award of $200,000 was

---

[2]This judgment was later stricken because the court concluded that E-Quality did not exhibit a willful refusal to litigate as required for entry of a default judgment. *See* September 13, 2004 Minute Order.

rationally related to the evidence and the award was comparable to other cases. However, this

case is distinguishable. In *Spina*, the court noted that "[i]n only a few cases within the Seventh

Circuit have courts upheld jury verdicts of more than $50,000 for emotional damages" and that

"[t]he Seventh Circuit typically requires special circumstances to justify large awards for

emotional distress." *Id.* at 773. In *Spina*, the court found that $200,000 was an appropriate

award for the plaintiff for the emotional damages suffered as a result of sexual harassment

because plaintiff "ha[d] endured such continuous harassment at the hands of so many different

officers and superiors for such an extended period of time [almost ten years]." *Id.* at 774. In this

case, however, while the court does not wish to diminish the distress suffered by Grant or

condone even very short-term harassment, Grant was employed at E-Quality for only six months

and suffered harassment at the hands of one supervisor.

In *Neal v. Honeywell*, 995 F. Supp. 889 (N.D. Ill. 1998), another case cited by Grant, the

court granted plaintiff $200,000 in emotional distress damages on a retaliatory discharge claim.

On appeal, the Seventh Circuit upheld that amount stating that it would have been excessive if

plaintiff had just lost her job, "even though [plaintiff] suffered ostracism, a year-long depression

and upheaval in her life." *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999). The court

noted that plaintiff's claim in *Neal* was "out of the ordinary" given the threats of physical injury

to the plaintiff. Thus, the harassment in *Spina* and *Neal* are not even roughly analogous to

Grant's experience at E-Quality.

As stated by the Seventh Circuit, "damages must be proportioned to injury." *Avitia v.*

*Metropolitan Club of Chicago*, 49 F.3d 1219 (7th Cir. 1995). Based on a review of damages

permitted in other Title VII cases, this court finds that an award of compensatory damages in the

amount of $35,000 is appropriate. *Sizer v. Rossie Contractors,* No. 98 6967, 2002 WL 1559694,

*6-8 (N.D. Ill. July 16, 2002) (granting remitittur from $125,000 to $25,000 for damages related

to claim of intentional infliction of emotional distress associated with discriminatory termination,

which left defendant "totally disillusioned," "devastated," "depressed," "in despair," and "scared

to go out and get a job hooked to a union."); *Fleming v. County of Kane,* 898 F.2d 553, 561-62

(7th Cir. 1990) (reduction of damages from $80,000 to $40,000 was proper where plaintiff was

discharged for whistle-blowing and consequently suffered embarrassment, humiliation,

depression, serious headaches, and sleeplessness); *Enright v. Illinois State Police,* No. 97 C

8688, 2000 WL 420857 (N.D. Ill. Apr. 18, 2000) (emotional distress damages award reduced

from $200,000 to $50,000 when discrimination caused the plaintiff to develop an ulcer and

become angry and upset, and her doctor diagnosed plaintiff as suffering from stress-induced

migraines).

The court acknowledges that not all of these cases involved damages for sexual

harassment; however, they are relatively comparable in terms of the types of distress suffered by

the plaintiffs. The court also considered the fact that certain medical records provided by Grant

in her motion for summary judgment indicated that some of her emotional distress may have

been caused in part by factors outside of the sexual harassment, including problems in her

relationships with her family and boyfriend and ongoing family illness. *Spina,* 207 F. Supp. 2d at

774 (in determining the appropriate amount of damages noting that "there were others stressors

in Plaintiff's life at the time of the alleged harassment.") (*citing Merriweather v. Family Dollar

Stores of Ind.,* 103 F.3d 576, 581 (7th Cir. 1996), in which court remitted $25,000 award for

retaliatory discharge to $6,250 (25% of original) in light of evidence that father's death and her

11

eviction may have contributed to plaintiff's emotional distress). *See also Sizer*, 2002 WL

1559694, at *6 (stating that some portion of plaintiff's stress could be attributed to loss of house

in foreclosure proceedings just prior to termination).

## IV.   CONCLUSION

For the foregoing reasons, the court denies Plaintiff's motion for reconsideration as to the

court's denial of summary judgment as to Counts II, III, and VII of the Complaint [R. 47-1].

Plaintiff's request for back pay is denied.  The court orders that Grant be awarded $35,000 in

compensatory damages for the reasons stated herein.

ENTER:

Blanche M. Manning
United States District Court Judge

DATE: 2-2-05